IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KLEE CHRISTOPHER ORTHEL,

    Plaintiff,

v.

JAMES A. YATES, warden,

    Defendant.

No. C 10-03612 SI

**ORDER DENYING RESPONDENT'S MOTION TO DISMISS WITHOUT PREJUDICE**

On September 9, 2011, a hearing was held with respect to respondent James Yates' motion to dismiss petitioner Klee Orthel's habeas corpus petition as untimely. At the hearing, petitioner's counsel agreed to give a copy of petitioner's medical records to respondent. For the following reasons, the court hereby DENIES respondent's motion to dismiss, without prejudice. Respondent may renew his motion to dismiss after review of the medical records, by **November 9, 2011**.

## BACKGROUND

On January 2, 1996, petitioner Klee Christopher Orthel was sentenced to twenty-nine years to life in prison. He had been convicted at trial of first degree murder in violation of California Penal Code section 187, with a finding of personal use of a firearm under California Penal Code section 12022.5. He appealed his conviction, and the judgment was affirmed in 1998. That same year, the California Supreme Court denied his petition for review. He filed a habeas petition in state court, which was also denied.

In the summer of 2010, Orthel filed a petition for a writ of habeas corpus in this Court. In the petition, he argues that he was denied his right to due process, to present a defense, and to effective

assistance of counsel when, during the sanity phase of Orthel's case, the state trial court issued a jury instruction *sua sponte* and without objection that the jury could consider statements made by defendant to his psychiatrist about his prior state of mind for the truth of the matter asserted if those statements were inculpatory, but not if the statements were exculpatory. Orthel argues that the statements were inadmissible under state hearsay law.

More relevant to the issue at hand, he also asserts in his petition that he is entitled to equitable tolling of the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") under the rule of *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003). He states that he "is, and at all times relevant to these proceedings has been, mentally incompetent, except for brief episodes of lucidity when he is properly medicated, which is not, and has not been, customary during his incarceration." Petition for a Writ of Habeas Corpus, Aug. 17, 2010, at 6.

Noting that Orthel's petition might be untimely under AEDPA's one-year limitation period, the Court ordered respondent either (1) move to dismiss the petition on the ground that it is untimely, or (2) inform the court that respondent is of the opinion that a motion to dismiss is unwarranted in this case. *See* Order on Initial Review, Oct. 20, 2010.

Respondent then filed a motion to dismiss on timeliness grounds. The parties agreed to hold the motion in abeyance until Orthel's attorney had an opportunity to obtain and review Orthel's medical records from his time in state prison, and the parties could file supplemental briefing. Orthel's attorney obtained a copy of Orthel's mental health records, and the parties filed supplemental briefs. On September 9, 2011, a hearing was held in which petitioner agreed to give respondent a copy of Orthel's medical records.

**LEGAL STANDARD**

AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 18 U.S.C. § 2244(d). Certain time periods, such as the time during which a properly filed application for state post-conviction or collateral review (including California habeas proceedings) is pending, do not count toward this one-year period. *See Porter v. Ollison*, 620 F.3d 952, 958–59 (9th Cir. 2010) (discussing various

computation rules). Additionally, because § 2244(d) is a statute of limitations and not a jurisdictional bar, the time period can be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (internal quotation marks omitted). The petitioner must also "show that the extraordinary circumstances were the cause of his untimeliness . . and that the extraordinary circumstances made it impossible to file a petition on time." *Id.* The high threshold of extraordinary circumstances is necessary "lest the exceptions swallow the rule." *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006) (internal quotations and citation omitted).

Whether mental illness warrants tolling depends on whether the petitioner's mental illness during the relevant time "constituted the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." *Laws v. Lamarque*, 351 F.3d 919, 922-23 (9th Cir. 2003). The Ninth Circuit explained that

> eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:
>
> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.
>
> To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file. The "totality of the circumstances" inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does

> secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (internal citations and footnote omitted).

In order to evaluate whether a petitioner is entitled to equitable tolling, a district court should:

> (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Id.* at 1100–01.

## DISCUSSION

At this stage, only petitioner's counsel has had the opportunity to review Orthel's medical records. Neither respondent nor the Court has received a copy of the records. At the September 9, 2011 hearing, parties agreed to make a copy of the records for respondent.[1] With respect to the motion to dismiss, then, the Court relies on the evidence and records-analysis thus far presented by petitioner.

In petitioner's supplemental brief, counsel represents to the Court that "at least since January 14, 1998, Petitioner has been so profoundly mentally ill that he has been incapable of meeting the AEDPA deadline." Petr.'s Supp. Opp., 2:15-17. Petitioner cites to multiple psychiatric diagnoses made in 1998 -- the year the Supreme Court denied his petition for review of his conviction -- that describe severe mental illness. *Id.* at 3. A staff psychologist at Pelican Bay State Prison diagnosed Petitioner as "Axis I: 295.70 Schizoaffective Disorder, Bipolar Type; 304.8 Polysubstance Dependence (Remission in a controlled environment)." Another staff psychiatrist documented that "the patient has a long well documented history of psychotic symptoms and recurrent major depression . . . he has a history of severe suicide attempts in the past with a near successful hanging in 1994. His medications have been partially helpful with auditory hallucinations recently at low level although increased at the time of admission." *Id.*

---

[1] At the hearing, petitioner's counsel pointed out that it is respondent's client who has the original records in the first place.

4

Much more recently, in March of 2011, the California Department of Corrections and Rehabilitation sought to involuntarily medicate petitioner by court order. To that end, a hearing was held pursuant to *Keyhea v. Rushen,* 178 Cal. App.3d 526 (Cal. Ct. App. 1986) (the "*Keyhea* hearing"). In preparation for the hearing, a staff psychiatrist, Dr. Lissaur, evaluated petitioner. Dr. Lissaur found that petitioner "suffers from a mental illness that, absent medication, renders him gravely disabled . . . . His symptoms include delusions, depression, and auditory hallucinations." Petr.'s Supp. Opp, Ex. 1 at 2. Dr. Lissaur paints a vivid picture of a man seriously ill. He describes petitioner's multiple suicide attempts, by attempted overdose, hanging, and electrocution, in 1994, 1996, and 2008. According to his report, petitioner at various times ate wet toilet paper, wrote on his wall with feces, and washed himself with urine. *Id.* at 3. As with his prior psychiatrists, Dr. Lissaur diagnosed petitioner with "schizoaffective disorder, bipolar type." *Id.* at 1.

At this stage, the evidence supports a finding that, at least when he is not medicated, petitioner can be psychotic, suicidal, severely depressed, delusional, or catatonic. The evidence further supports a finding that petitioner has auditory hallucinations and is severely mentally disabled. The Court is thus convinced that, for at least significant periods of time, "petitioner was unable rationally or factually to personally understand the need to timely file," satisfying the first prong of the *Bills* test. *Bills,* 628 F.3d 1092 at 1099. As to the second prong - that "petitioner must show diligence in pursuing the claims to the extent he could understand them" - the Court finds that petitioner spent long stretches of time unable to understand his legal claims. *Id.*

However, the evidence also shows that, for at least one year and possibly longer, Orthel was medicated. For example, he was involuntarily medicated between June 15, 2006 and June 15, 2007. Petr.'s Supp. Opp. Ex. 1 at 3. He voluntarily took medication from some point in time until January 16, 2008. He was again involuntarily medicated beginning on January 22, 2008. *Id.* Dr. Lissaur also notes that petitioner at times "presented well and was able to respond to questions appropriately." *Id.* at 3.

It is unclear at this time whether petitioner was sufficiently cognizant during the periods he was medicated to rationally understand the need to timely file and understand his claims. The Court agrees that petitioner has made a sufficient showing that, for significant periods of time since his conviction, he has been gravely disabled. Therefore, a motion to dismiss at this time is inappropriate.

However, as noted above, the Court is aware that respondent has not yet reviewed petitioner's medical records. Therefore, the Court will allow respondent to re-file his motion after he reviews the medical records should he elect to do so. A second motion to dismiss should contain approximate dates of the periods during which petitioner was medicated; whether he was sufficiently aware and rational during those periods to file his petition; and whether those periods, if any, add up to over one year.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DISMISSES the respondent's motion to dismiss without prejudice. The respondent may renew his motion by **November 9, 2011.**

**IT IS SO ORDERED.**

Dated: September 12, 2011

SUSAN ILLSTON
United States District Judge