IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLEE CHRISTOPHER ORTHEL,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES A. YATES,<br><br>    Respondent.<br>_____/ | No. C 10-03612 SI<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS HABEAS CORPUS PETITION** |

Respondent has moved to dismiss the petition for habeas corpus filed by Klee Christopher Orthel, an inmate of California State Prison system. The habeas petition is brought pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the motion to dismiss is GRANTED.

**BACKGROUND**

On November 21, 1995, petitioner was convicted of first degree murder in violation of California Penal Code section 187, with a finding of personal use of a firearm under California Penal Code section 12022.5. On January 2, 1996, petitioner was sentenced to twenty-nine years to life in prison. He appealed his conviction, and on January 21, 1998, the appellate court affirmed the judgment of conviction. On April 29, 1998, the California Supreme Court denied review. On August 17, 2010, twelve years later, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254.[1]

---

[1] The habeas petition presents one substantive claim: that the state trial court improperly, on its own motion and without objection, instructed the jury during the sanity phase that it could consider statements made by petitioner to a psychiatrist about his prior state of mind if the statements were inculpatory but not if they were exculpatory. Habeas Pet. at 6 (Dkt. 1). Petitioner argues that the statements were inadmissible hearsay under state law, and their admission denied his rights "to due process, to present a defense [and] effective assistance of counsel." The petition also claims the right

On December 17, 2010, respondent moved to dismiss the petition as untimely, citing the one-year statute of limitations on filing a habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244(d). Petitioner opposed, asserting that he has been mentally incompetent at all times relevant to these proceedings and thus is entitled to equitable tolling of the statute of limitations. Petitioner subsequently received a stay to obtain his prison mental health records. On September 9, 2011, after petitioner received the records but before the records were given to respondent or the Court, the Court held a hearing on the motion to dismiss. At the hearing, the Court ordered petitioner to make the mental health records available to respondent. In a September 12, 2011 Order, the Court denied respondent's motion to dismiss without prejudice to refiling after respondent had an opportunity to review the records. *See* Sept. 12, 2011 Order Denying Resp.'s Mot. to Dismiss Without Prej. (Dkt. 22). The Court noted that on the record then before it, there was evidence that petitioner was severely mentally disabled and, for at least significant periods of time, he was unable to understand the need to timely file a petition. *Id.* at 5. The Court also noted, however, that the evidence showed that for at least one year and possibly longer, petitioner was medicated. *Id.* The Court stated that "it is unclear at this time whether petitioner was sufficiently cognizant during the periods he was medicated to rationally understand the need to timely file and understand his claims." *Id.* The Court stated that after reviewing petitioner's mental health records, respondent could file a second motion to dismiss that contains "the approximate dates of the periods during which petitioner was medicated; whether he was sufficiently aware and rational during those periods to file his petition; and whether those periods, if any add up to over one year." *Id.* at 6.

On January 13, 2012, having reviewed the records, respondent filed a renewed motion to dismiss. Dkt. 28. On January 18, 2012, petitioner lodged the extensive medical records with the Court. Dkt. 30 (Compact Disk filed). On February 9, 2012, petitioner filed an opposition to the motion to dismiss. Dkt. 31. On February 14, 2012, respondent filed a reply.

---

to equitable tolling. for its late filing. *Id.*

2

## LEGAL STANDARD

AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 18 U.S.C. § 2244(d). Certain time periods, such as the time during which a properly filed application for state post-conviction or collateral review (including California habeas proceedings) is pending, do not count toward this one-year period. *See Porter v. Ollison*, 620 F.3d 952, 958–59 (9th Cir. 2010) (discussing various computation rules). Additionally, because § 2244(d) is a statute of limitations and not a jurisdictional bar, the time period can be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (internal quotation marks omitted). The petitioner must also "show that the extraordinary circumstances were the cause of his untimeliness . . . and that the extraordinary circumstances made it impossible to file a petition on time." *Id.* The high threshold of extraordinary circumstances is necessary "lest the exceptions swallow the rule." *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006) (internal quotations and citation omitted).

Whether mental illness warrants tolling depends on whether the petitioner's mental illness during the relevant time "constituted the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." *Laws v. Lamarque*, 351 F.3d 919, 922-23 (9th Cir. 2003). The Ninth Circuit has explained that

> eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:
>
> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access

> to assistance.
>
> To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file. The "totality of the circumstances" inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (internal citations and footnote omitted).

Therefore, in order to evaluate whether a petitioner is entitled to equitable tolling, a district court should:

> (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Id.* at 1100–01.

## DISCUSSION

AEDPA's one-year limitation periods commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This includes the 90-day time period to file a petition for certiorari in the United States Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1158-1159 (9th Cir. 1999). The California Supreme Court denied review of petitioner's appeal on April 29, 1998; thus his case became final on July 29, 1998. Petitioner thereafter had one year – until July 28, 1999 – to file a federal habeas petition. However, petitioner did not file a petition until August 17, 2010, more than 11 years later.

Petitioner must therefore meet the *Bills* test for the entire period between July 28, 1998, and August 17, 2010, less any lucid periods not greater in sum than one year. First, petitioner must either

4

have been so mentally impaired as to be unable to understand the need to timely file this petition or unable to personally prepare and effectuate the filing of this petition due to his mental state. *Id*. at 1099. Second, petitioner must have diligently pursued this petition to the extent he could understand the need to do so. *Id.* at 1100. The Court will analyze petitioner's diligence given the totality of the circumstances, including petitioner's access to assistance. *Id*. Petitioner's impairment must have been a but-for cause of the twelve year delay in filing this petition. *Id*. at 1100-1101.

Courts have declined to toll the statute of limitations under AEDPA where a petitioner's mental functions are within normal limits. *See Roberts v. Marshall*, 627 F.3d 768, 770 (9th Cir. 2010) (no tolling where petitioner's mental functions were classified as "good," "fair," or "within normal limits."); *see also Stone v. Kipp*, No. 2:11-cv-1605, 2011 U.S. Dist. LEXIS 121139, *22-23 (E.D. Cal., Nov. 14, 2011) (no tolling where petitioner failed to demonstrate that mental impairment was so severe that he was unable to understand need to file even though he suffered from serious mental illness during relevant period).

Petitioner's medical records during the relevant times show an eight year period, starting in June 1998 and ending in 2006, when petitioner was largely stable. Petitioner took medications for his conditions throughout this time period, except for a brief period of a few weeks in 2004. Orthel Medical and Psychiatric Records ("Prison Recs.") Ex. 5 at 1335, 1338, 1341. In July 1997, petitioner was prescribed Haloperidol by psychiatric staff. While there were "parasuicidal acts" between July 1997 and May 1998, he "maintained stable on risperidone and bupropion and his level of care was lowered" in October 2001. He "continued to maintain stable for several years," but in early April 2004, a note indicates that he told his mother he had covertly discontinued medication. *Id.* at 1866. The records indicate that he was back on his medication by April 21, 2004, *id.* at 1343, and by June 2004 was described as "alert and oriented; thinking is clear; insight and judgment moderate." *Id.* at 1340. An April 26, 2005 evaluation described petitioner as "articulate and friendly," notes that he is "medication compliant," and states that he is "high functioning . . . [T]he psych med's make a major impact in a beneficial way." *Id.* at 1364.

Evaluations throughout this period describe petitioner as clear-headed and an active participant in prison programs. On June 30, 1998, petitioner was described as "fully alert and oriented," with

5

"fairly good" insight and judgment regarding his illness. *Id.* at 1371. On October 6, 1998, he was described as responsive, clear, coherent, and high functioning. *Id.* at 1403. On November 6, 1998, "his thought process was primarily clear, rational, and organized." *Id.* at 1387. Throughout 1999 he participated in a group program aimed at relapse prevention and was consistently attentive and a "good participant." *Id.* at 1526, 1530. By September 1999, he was attending a vocational electronics class and was described as a "bright young man who participates actively in class," and "well behaved, respectful, neat in appearance and a conscientious young man." Ex. 1 at 193. He was "very goal directed," and completed 24 units of college classes. Ex. 5 at 2188. He made the honor role every semester, and became concerned when his grades slipped one semester. *Id.* at 1595. He began a job reading books on tape for the blind and was "consistently stable." *Id.* at 1301, 1462. In 2003, his records note that he had "no psychosis since 1998." *Id.* at 1310. In 2001, a psychiatric report notes that he "appears motivated to cooperate with the treatment/program. His speech is normal . . . Appears stabilized on meds." *Id.* at 1585. Another states that petitioner was "groomed, polite, and cooperative . . . [He] is also aware of his mental illness, it's symptoms, and the effects that it has on his life including his state when he does not take his meds. This awareness is something that keeps him programming and taking his meds regularly." *Id.* at 1586. In 2004 and 2005, he reported that his medication was "working for him" and his symptoms were in "good remission." *Id.* at 1325, 1804.

Petitioner's medical records establish that he was a sufficiently competent and capable individual to manage his own affairs from June 1998 through 2005. *See Stofle v. Clay*, 2011 U.S. Dist. LEXIS 37228 (N.D. Cal. 2011) (Armstrong, J.) (finding equitable tolling not warranted where petitioner had demonstrated sufficient "mental competency" to "manage his own affairs."). He consistently functioned at a high level throughout the early 2000's. The records do indicate that petitioner suffered severe psychotic breaks when going off his medication in 2006. *Id.* at 1779, 1772.[2] However, there were periods of sufficient competency far exceeding one year for which petitioner has been unable to show

---

[2] Petitioner's mother also submits a number of letters sent by petitioner to her during his incarceration. *See* Pet.'s's Opp., Ex. 1. Unlike the mental health records, the letters do not provide the Court with a professional or expert opinion regarding petitioner's mental state. Moreover, while the letters clearly illustrate petitioner's often stressful life in prison, they do not demonstrate that he was unable to understand the need to timely file a habeas petition or that he was personally unable to do so.

6

the requisite "extraordinary circumstances" under *Bills* to warrant tolling. 628 F.3d at 1099–1100. Petitioner has not demonstrated that for a full 11 years he was unable to understand the need to timely file or that his mental state rendered him personally unable to file or effectuate the filing of this petition. *Bills*, 628 F.3d at 1099–1100. Moreover, petitioner has made no showing with respect to the second prong of *Bills*, that he was diligent in pursuing his claims. *Id.*

Instead of pointing to specific medical records or time periods to establish tolling, petitioner makes two general arguments in his opposition papers: (1) that the records "upon which respondent relies were made during a period when the mental health system in California prisons was so notoriously deficient, in part due to staff inadequacies, that the records cannot be trusted," and (2) that even if the records can be trusted, "they reflect stability, but they do not reflect the ability contemplated by the Ninth Circuit." Pet.'s Opp. at 7.

Regarding the first argument, petitioner points to no specific records that he believes are unreliable. Nor does petitioner provide any support for his allegation that the *records* kept in California's prisons were "notoriously deficient." As respondent points out, while a class action lawsuit regarding health care in California's prisons found numerous deficiencies, unreliable-record keeping was not one of them. Resp.'s Reply at 2 (*citing Brown v. Plata*, 131 S. Ct. 1910 (2011)). Finally, petitioner ignores that the burden is on him to establish tolling, not on respondent to prove its absence. *Holland v. Florida*, 130 S. Ct. 2549, 2566 (2010).

Regarding the second argument – that petitioner's records reflect stability but not *ability* to file a habeas petition – petitioner provides no support for the proposition that he needed any higher state of mental capacity than simply a normal, stable one to be able to understand the need to timely file. In *Roberts v. Marshall*, 627 F.3d 768, 770 (9th Cir. 2009), the Ninth Circuit affirmed a district court's finding that equitable tolling was not warranted where the petitioner's mental health records described him as "good," "fair," or "within normal limits" for more than the statutory period. Likewise, in *Stofle*, Judge Armstrong denied equitable tolling where the petitioner was described as having "cognition within normal limits." 2011 U.S. Dist. LEXIS 37228 at *15. Here, petitioner's medical records variously describe him as "high functioning," "using every moment to grow intellectually and emotionally," "stable and reports having been so for some time," and "doing very well." Prison Recs.

7

at 1573, 1575, 1586. Petitioner need not have had a higher level of mental capacity than that described in the records in order to understand the need to timely file.

In sum, petitioner has not demonstrated that he was unable "rationally or factually to personally understand the need to timely file" or shown that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing" for the 11 years past the statute of limitations that he filed his petition. *Bills*, 628 F.3d at 1099–1100. Equitable tolling is not warranted for the requisite period, and therefore, the motion to dismiss is GRANTED.

## CONCLUSION

The Court finds petitioner has not established the necessary amount of equitable tolling to avoid dismissal under the statute of limitations for his petition. The Court GRANTS respondent's motion to dismiss. The clerk should close the file.

**IT IS SO ORDERED.**

Dated: August 17, 2012

SUSAN ILLSTON
United States District Judge